## William E. Barr, Appellant, *v.* The Pine Township Board of Supervisors, Appellee.

Argued May 8, 1975, before Judges CRUMLISH, JR., WILKINSON, JR., and BLATT, sitting as a panel of three.

*James S. Carey, Jr.*, with him *Ronald P. Koerner* and *Gatz, Cohen, Segal & Koerner*, for appellant.

*Henry W. Ewalt*, with him *William H. Markus*, for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 14, 1975:

Presently before us is the appeal of William E. Barr (Appellant) whose sixty day suspension as a police officer by the Pine Township Board of Supervisors (Board) was sustained by the Allegheny County Court of Common Pleas.

On December 8, 1972, Appellant, the only member of the five man police force on duty, received a telephone call reporting that the Pine Township Junior High School was the object of a bomb threat. Appellant unsuccessfully attempted to contact the police chief, and in ac-

cordance with established procedure, he contacted Sergeant Herr, the next senior officer who, at the time, was off duty. At this juncture of the factual posture, a dispute arises. The Sergeant testified that he told Appellant to go to the school and evacuate the children. Appellant, however, maintains that no such specific command was given, but rather claims that he was told to instruct school personnel to evacuate the children, whereupon he telephoned the school officials to commence evacuation. He then resumed his duties. Later when the chief of police learned of the incident, he ordered Appellant to the school.

Appellant frames three issues for our resolution.

1) Did Appellant get a fair hearing before the Board consisting of two of the three Supervisors when one of them had suspended Appellant and had been personally involved in the case prior to the filing of the charges?

2) Did the Board abuse its discretion when it suspended Appellant on the basis of contradictory testimony to the extent that there was error as a matter of law?

3) Was it an abuse of discretion to mete a sixty day suspension under these circumstances?

First, Appellant contends that Chairman of the Board of Supervisors, Donald C. Peters, having discussed matters relating to one of the charges lodged against Appellant with him, and suspending him as a result thereof, denied him due process when the Chairman presided at the Board's hearing. Judge WILKINSON'S recent opinion in *Rayne v. Edgewood School District,* 19 Pa. Commonwealth Ct. 353, 339 A.2d 151 (1975), wherein he cited *Withrow v. Larkin,* 43 U.S.L.W. 4459 (U.S. April 16, 1975) is dispositive. It was there held that investigation, preparation of charges, the conduct of hearings, the assessment of penalties or the determination of guilt or innocence are all within the scope of administrative body functions. Although not cited by Appellant, due no doubt to the recentness of its decision of our Supreme Court

*Mallon v. Township of Upper Moreland,* Pa. , 336 A.2d 266 (1975) on initial impulse might tend to lend credence to Appellant's argument, where writing in support of reversal in an evenly divided Court,[1] Justice O'BRIEN stated:

"In my opinion, the decision against appellants should be reversed because they were denied due process of law when Commissioner Curtis, who filed the charges against appellants, sat on the Board of Township Commissioners, who, in the first instance, found appellants guilty of the charges filed against them. In Gardner v. Repasky, 434 Pa. 126, 252 A. 2d 704 (1969), we were presented with a situation similar to that of the instant case, and we held:

'Another independent ground for reversal is the position of conflict occupied by John Repasky. Repasky was a member of the Fire Board which originally complained about appellant and a member of the Civil Service Commission which heard appellant's appeal. (He cast the deciding vote for suspension in a 2-1 Commission decision). Appellees claim that no bias in fact has been shown and that Repasky took no part in making the original complaint. This is not to the point. "... [A]ny tribunal permitted by law to try cases and controversies must not only be unbiased but must avoid even the appearance of bias." Commonwealth Coatings Corp. v. Continental Casualty, 393 U.S. 145-50 (1968).' 434 Pa. at 129, 252 A.2d at 705.

"In the instant case, Commissioner Curtis brought the charges against appellants and participated on

---

1. The Supreme Court was divided 3-3 with Chief Justice JONES and Justice POMEROY joining in Justice O'BRIEN's opinion in support of reversal. Justice MANDERINO wrote the opinion in support of affirmance and was joined by Justice EAGEN and Justice NIX. Justice ROBERTS took no part in the consideration of the case.

the seven-member board of commissioners which, by a four to three vote, affirmed the charges lodged against appellants by Commissioner Curtis. Under these facts, there can be no other conclusion than appellants were denied due process of law in the first instance. See also Donnon v. Downington Civil Serv. Comm., 3 Pa. Commonwealth Ct. 366, 283 A. 2d 92 (1971)." Pa. at , 336 A.2d at 267.

Although there is a striking similarity between *Mallon* and the instant case, Mallon is clearly distinguishable. There the Supervisor was the one who *filed* charges, *prepared* and *judicially presided* over them. *Rayne* allows preparation and conduct of hearings but in no way sanctions the person who filed the charge to eventually decide it. Here, Commissioner Peters did not file the charge. He simply prepared it for disposition.[2] In these circumstances, Appellant's posture is neither within *Mallon* or *Donnon v. Downington Civil Service Commission*, 3 Pa. Commonwealth Ct. 366, 283 A. 2d 92 (1971) exceptions to the broad due process principles given us by *Rayne*.

Similarly, we dismiss Appellant's claim that the absence of a complete Board denied him due process. Although the Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. §§811-816 (commonly known as and hereinafter referred to as the Police Tenure Act) does not contain a section defining whether a quorum, majority or totality of the appointing authority is necessary in order to properly conduct hearings, we find no violence to the administrative process where only two of three Board members presided. We had a similar situation present in *City*

---

2. The record shows that with respect to the filing of charges that one charge was brought by J. Blair Leahy, Jr., Vice Chairman, Joint Police Board of the Tri-Area while the other charge was brought by Chief of Police Baer. Chairman Peters merely issued a letter on the recommendation of Chief Baer relating to the suspension of Appellant.

*of Duquesne Civil Service Commission v. Ballough,* 16 Pa. Commonwealth Ct. 265, 329 A. 2d 528 (1975). However, there Section 1.2 of the Fireman's Civil Service Act, Act of May 31, 1933, P.L. 1108, §1.2, *as amended,* 53 P.S. §39861.2 was in issue and it specifically provided that two board members constituted a quorum necessary for the transaction of business. That legislative expression is not dispositive of the Police Tenure Act, of course, but it is indicative of the parameters needed to meet the requirements of administrative due process. With this in mind, we cannot find that Appellant was denied due process by the fact that all Board members did not preside at the hearing.

Next, Appellant argues that the record is so contradictory that the Board, as the finders of fact, could not intelligently judge Appellant's conduct. This is, indeed, provocative but unconvincing. In most judicial proceedings, facts are controverted. The degree to which they are controverted may make the fact finder's task more intricate or demanding, but, in no way emasculates the duty visited upon him to decide the credibility and weight of the testimony. We have consistently held that in Pennsylvania administrative practice the fact finder, whether a referee, Board of Supervisors, commission, or other quasi-judicial authority, is the sole agent vested with fact finding responsibility. A further discussion of this in the face of all of our precedents is unnecessary.

And finally, the Board did not abuse its discretion in ordering Appellant's suspension since Section 2 of the Police Tenure Act, 53 P.S. §812[3] specifically provides for

---

3. Section 2 states:

"No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, with the exception of policemen appointed for a probationary period of one year or less, shall be *suspended,* removed or reduced in rank except for the following reasons:

*suspension,* removal or reduction in rank if any one of five violations occurs.

We find it incumbent on us to recognize the concern of Judge POPOVICH when he wrote that superior officers commanding a small fleet, although they are off duty, might and perhaps should have been subjected to some discipline. Unfortunately for him, Appellant was the only individual charged. For us and the fact finders, the sanctions are more difficult to justify, but we must rely on the record which fully supports the action of the Board.

Affirmed.

---

(1) physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. A person so employed shall not be removed for religious, racial or political reasons. A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed." (Emphasis added.)